IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CURTIS MCCAULEY                                                                                        PLAINTIFFS
and CARMEN MCCAULEY
*On behalf of* D.M., A MINOR

vs.                                            Civil No. 6:16-cv-06034

NANCY A. BERRYHILL                                                                                     DEFENDANT
Acting Commissioner, Social Security Administration

## MEMORANDUM OPINION

Curtis and Carmen McCauley ("Plaintiffs") brings this action on behalf of D.M., a minor, pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying D.M.'s application for Supplemental Security Income ("SSI") under Title XVI of the Act.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 7.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.    Background:**

Plaintiffs protectively filed an SSI application on behalf of D.M. on September 23, 2013. (Tr. 27). With this application, Plaintiffs allege D.M. is disabled due to a heart condition. (Tr. 154). Plaintiffs allege D.M.'s onset date was September 23, 2013. (Tr. 27). This application was denied

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ____" The transcript pages for this case are referenced by the designation "Tr."

initially and again upon reconsideration. (Tr. 68-86).

Thereafter, Plaintiffs requested an administrative hearing on March 6, 2014. (Tr. 102). This hearing request was granted, and Plaintiffs' administrative hearing was held on October 28, 2014 in Hot Springs, Arkansas. (Tr. 43-66). Plaintiff Carmen McCauley and D.M. were present and were represented by Shannon Carroll at this hearing. *Id.* D.M. and Plaintiff Carmen McCauley testified at this hearing. *Id.*

On January 29, 2015, the ALJ entered an unfavorable decision denying Plaintiffs' application for SSI on behalf of D.M. (Tr. 24-38). In this decision, the ALJ determined D.M. was a preschooler on the date his application was filed and was a preschooler as of the date of his decision. (Tr. 30, Finding 1). The ALJ determined D.M. had not engaged in Substantial Gainful Activity ("SGA") since September 23, 2013, his application date. (Tr. 30, Finding 2). The ALJ determined D.M. had the following severe impairments: congenital aortic stenosis and post-traumatic stress disorder (status-post heart surgery). (Tr. 30, Finding 3). The ALJ also determined, however, that none of D.M.'s impairments met, medically equaled, or were functionally equivalent to the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4 ("Listings"). (Tr. 30-38, Finding 5).

In assessing whether D.M.'s impairments were functionally equivalent to the Listings, the ALJ assessed six domains of functioning. (Tr. 30-38, Finding 5). Specifically, the ALJ determined D.M. had the following limitations in the six domains of functioning: (1) no limitation in acquiring and using information; (2) no limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others; (4) less than marked limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself; and (6) less than marked limitation in health and physical well-being. *Id.* Based upon these findings, the ALJ determined

D.M. had not been under a disability, as defined by the Act, at any time from the date Plaintiffs' application was filed through the date of the ALJ's decision. (Tr. 38, Finding 6).

Thereafter, on March 11, 2015, Plaintiffs requested the Appeals Council's review of the ALJ's unfavorable decision. (Tr. 22-23). On March 15, 2016, the Appeals Council declined to review this unfavorable decision. (Tr. 1-3). On April 15, 2016, Plaintiff filed the present appeal. ECF No. 1. The Parties consented to the jurisdiction of this Court on April 20, 2016. ECF No. 7. Both Parties have filed appeal briefs. ECF Nos. 11-12. This case is now ready for decision.

**2.    Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

In this case, Plaintiff is seeking disability benefits on behalf of a minor child. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of

1996, Public Law No. 104-193, 110 Stat. 2105 (1996) (codified at 42 U.S.C. § 1382c(a)(3)(C)), which provided a more stringent standard for determining eligibility for Title XVI childhood disability benefits than the old law and prior regulations required. *See Rucker v. Apfel*, 141 F.3d 1256, 1259 (8th Cir. 1998); 142 Cong. Rec. H8913; H.R. Conf. Rep. No. 725, 104th Cong. 2d Sess. 328 (1996), reprinted in 1996 U.S. Code, Cong. and Ad. News 2649, 2716; Federal Register, Vol. 62, No. 28, p. 6409.

Among other things, the new law amended Section 1614(a)(3) of the Act, 42 U.S.C. § 1382c(a)(3), and changed the statutory definition of disability for individuals under age eighteen (18) under the SSI program. Under the new standard, a child is entitled to disability benefits only if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* Pub. L. No. 104-193 § 211(a)(4)(c); 20 C.F.R. § 416.906. The new standard applies to all applicants who filed claims on or after August 22, 1996, or whose claims had not been finally adjudicated by August 22, 1996. Since Plaintiffs filed their application in 2013, the new law applies.

Under the new law, the ALJ's disability determination is based upon a three-step analysis. *See* 20 C.F.R. § 416.924. First, the ALJ must determine whether the minor child has engaged in substantial gainful activity. If not, the ALJ will proceed to the second step where the ALJ must consider whether the child has a severe impairment. If a severe impairment is found, the ALJ will proceed to the third step. At this step, the ALJ, must consider whether the impairment meets, or is medically or functionally equivalent, to a disability listing in the Listing of Impairments ("Listings"), *See* 20 C.F.R. pt. 404, subpt. P, app. 1. A minor child may be disabled if his or her impairment is

functionally equivalent to a disability listing, even if the minor child's impairment does not meet the standard requirements for a disability listing. *See* 20 C.F.R. § 416.924(d)(1).

A single method is provided for evaluating whether an impairment is "functionally equivalent" to a disability listing, based upon six domains of functioning. The six domains are the following: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself or herself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). If the minor child claiming benefits has "marked" limitations in two of these domains or an "extreme" limitation in one of these domains, then the child's impairment is functionally equivalent to a disability listing. *See id.* § 416.926a(a); *Moore ex rel. Moore v. Barnhart,* 413 F.3d 718, 721 (8th Cir. 2005).

A "marked" limitation is a limitation that is "more than moderate" and "less than extreme." *See id.* § 416.926a(e); *Lehnartz v. Barnhart,* No. 04-3818, 2005 WL 1767944, at *3 (8th Cir. July 27, 2005) (unpublished). A marked limitation is one that seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e). An "extreme" limitation is more than "marked" and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. *See id.* "Extreme" limitation is the rating the Commissioner gives to the most serious limitations. *See id.*

**3.      Discussion:**

In Plaintiffs' appeal brief, they raise two arguments for reversal: (A) the ALJ erred by finding D.M.'s impairments did not meet the requirements of Listing 104.06; and (B) the ALJ erred by finding D.M.'s impairments were not functionally equivalent to the Listings. ECF No. 11 at 1-20. The Court will evaluate both of these arguments for reversal.

### A.   Listing 104.06

Plaintiffs claim D.M.'s heart impairment meets the requirements of Listing 104.06. ECF No. 11 at 4-7. Listing 104.06 applies to a "congenital heart disease" and provides that (A) cyanotic heart disease; (B) secondary pulmonary vascular obstructive disease; (C) symptomatic acyanotic heart disease; and (D) infantile congenital heart impairment.

Upon review of Plaintiffs' appeal brief, it is unclear *which* category (A) to (D) D.M.'s impairment meets. Notably, Plaintiffs do not specify which category. Further, Listing 104.06 applies to a "congenital heart disease" and requires specific requirements be met in order for D.M. to demonstrate he is disabled. Plaintiffs have the burden of demonstrating D.M.'s impairments meet all of the requirements of Listing 104.06. *See Johnson v. Barnhart,* 390 F.3d 1067, 1070 (8th Cir. 2004). Here, Plaintiffs have not made that demonstration; accordingly, they have not met their burden. Thus, the Court cannot find the ALJ erred in finding D.M.'s heart impairment did not meet the requirements of Listing 104.06.

### B.   Functional Equivalence

As noted above, the ALJ evaluated six domains of functioning to determine functional equivalence: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself or herself, and (6) health and physical well-being.

In the present action, Plaintiffs claim D.M. has a "marked" limitation in the second through the fifth domains and an extreme limitation in the final domain. ECF No. 11 at 4-20. The Court will address each of these disputed domains.

### 1. Attending and Completing Tasks

Plaintiffs claim the record demonstrates D.M. has "panic disorder, phobia, and anxiety disorder" and he "is not able to focus long enough to independently complete tasks." ECF No. 11 at 10-11. In support of this claim, Plaintiffs reference therapy records from Community Counseling Center wherein D.M. reportedly suffered from anxiety and social and relationship problems. *Id.*

In his opinion, the ALJ considered this domain and found the following:

> <u>The claimant has no limitation in attending and completing tasks</u>. The claimant is able to pay attention to things such as television, music, and books for at least 15 consecutive minutes (Exhibit 3E, p. 7). Further, mental status examinations and observations show that he is alert and oriented, makes good eye contact, clear speech, logical thoughts, and an apparent normal memory (Exhibit 11F, p. 12). Based on these factors along with the testimony of the claimant's mother at the hearing, which did not suggest or report any marked or even moderate limitation in this domain, the undersigned finds that the claimant has no identified limitation in his ability to attend and complete tasks.

(Tr. 34).

After reviewing this analysis and Plaintiffs' briefing in this matter, the Court finds no basis Plaintiffs' argument that D.M. has a marked limitation in this domain of functioning. Thus, the Court will not reverse the ALJ's disability determination based upon this issue.

### 2. Interacting and Relating with Others

Plaintiffs claim D.M. has a marked limitation in this domain of functioning because he becomes "angry and defiant" when dealing with people. ECF No. 11 at 11-12. Plaintiffs then cite several medical records indicating Plaintiffs *reported* D.M. was "sometimes demanding and defiant." *See, e.g.,* Tr. 575.

In his opinion, the ALJ considered this domain and found the following:

> <u>The claimant has less than marked limitation in interacting and relating with others</u>. After undergoing his most recent surgical heart procedure, the claimant began

> displaying post-surgical anxiety-related symptoms including, separation anxiety, fear of being alone, overreaction, panic attacks, as well as fear of needles and medical personnel, according to the mother's testimony (Exhibit 11F, p. 4, 10). These symptoms and traits are relatively recent developments, which have not yet proven or been shown to exist for the requisite 12-consecutive months to qualify as a severe impairment (Exhibit 11F). Moreover, at the hearing, the claimant's mother testified that the claimant is personable and has lots of friends. Additionally, clinical notes from June 2014 show that upon evaluation, the claimant was smiling, friendly, playful, sharing and giving, and overall entirely appropriate for his age (Exhibit 11F, p. 10). Consequently, based on these findings, even if the durational 12-month consecutive time period were met, the claimant's limitations in interacting and relating with others is less than marked.

(Tr. 35).

After reviewing this analysis and Plaintiffs' briefing in this matter, the Court finds no basis Plaintiffs' argument that D.M. has a marked limitation in this domain of functioning. Thus, the Court will not reverse the ALJ's disability determination based upon this issue

### 3.   Moving About and Manipulating Objects

Plaintiffs claim D.M. has a marked limitation in his ability to move about and manipulate objects. ECF No. 11 at 12-13. In support of their claim, Plaintiffs reference D.M.'s medical records wherein he has been directed to "avoid all contact sports." ECF No. 11 at 12-13. Plaintiffs also reference D.M.'s records which demonstrate he had "already missed 8 days of school as of October 28, 2014, and school starts late August." *Id.*

In his opinion, the ALJ considered this domain and found the following:

> <u>The claimant has less than marked limitation in moving about and manipulating objects</u>. Although there are some concerns relative to the claimant's ability to participate in contact or endurance sports, there appears to be no significant encumbrances relative to his ability to move about or manipulate objects. Previously, he was advised against partaking in contact sports; however, more recent notes show that he enjoys baseball and football activities and he has recently learned to ride a bike without assistance of training wheels, according to testimony from his mother (Exhibit 11F, p. 5). Furthermore, the claimant's mother testified that the claimant no longer has respiratory distress when exercising. In consideration of these factors, the

undersigned determines that the claimant's limitations in moving about and manipulating objects are less than marked.

(Tr. 36).

After reviewing this analysis and Plaintiffs' briefing in this matter, the Court finds no basis Plaintiffs' argument that D.M. has a marked limitation in this domain of functioning. Thus, the Court will not reverse the ALJ's disability determination based upon this issue.

### 4. Caring for Himself

Plaintiffs claim D.M. has a marked limitation in his ability to care for himself. ECF No. 11 at 13. Specifically, Plaintiffs claim D.M. suffers from a marked limitation in this domain of functioning because he suffers from "emotional problems" including "phobia and fear of being left." *Id.*

In his opinion, the ALJ considered this domain and found the following:

> The claimant has no limitation in the ability to care for himself. Relative to his ability to perform age-appropriate activities related to self-care and grooming, the claimant has no cognizable limitations. For example, he is able to control his bowel and bladder movements, feed and dress himself, bath independently, brush his teeth, and he is able to put away his things after he has used them (Exhibit 3E, p. 7). Consequently, in this domain, the claimant does not have any known limitations.

(Tr. 37).

After reviewing this analysis and Plaintiffs' briefing in this matter, the Court finds no basis Plaintiffs' argument that D.M. has a marked limitation in this domain of functioning. Thus, the Court will not reverse the ALJ's disability determination based upon this issue.

### 5. Health and Physical Well-Being

Plaintiffs claim D.M. has an "extreme" limitation in this domain of functioning. ECF No. 11 at 14-19. Plaintiffs claim this limitation is due to D.M.'s repeated treatment for his congenital

heart disease. *Id.* Plaintiffs claim the ROSS procedure which D.M. underwent to treat this impairment did not cure all of his problems, thus he has an "extreme" limitation in this domain. *Id.* Notably, Plaintiffs claim D.M. still suffers from shortness of breath, swelling, and a weak immune system. *Id.*

In his opinion, the ALJ considered this domain and found the following:

> The claimant has less than marked limitation in health and physical well-being. The claimant was born with a congenital aortic stenosis that required his first surgery at the age of five-months old and a subsequent procedure in 2013 at the age of five (Exhibit 2F, p. 21;7F, p. 24). He experienced continued ups and downs with various cardiac symptomology leading up to his application date of disability, including exercise intolerance, shortness of breath, excessive sweating, fatigue, cough, and recurring fevers (Exhibit 1F, p. 4, 6, 8-10, 16, 17; 2F, p. 12, 15, 16, 83, 90, 101; 5F, p. 39; 9F, p. 10, 21). Due to these recurring symptoms stemming from his congenital aortic valve stenosis, he would undergo aortic valve replacement, also called a Ross procedure, in October 2013 (Exhibit 2F, p. 65). Clinical records indicate that there were no complications from the procedure and although overall recovery was drawn-out over the next few months and fraught with ups and down[s], the overall outcome of the procedures provided to be very favorable (Exhibit 2F, p. 21, 36; 6F, p. 5, 11; 10F, p. 6). Notes from early 2014 show him to be making an "excellent recovery" surgery and his extreme respiratory distress proved to be virtually eliminated (Exhibit 6F, p. 14, 15).

(Tr. 37).

After reviewing this analysis and Plaintiffs' briefing in this matter, the Court finds no basis Plaintiffs' argument that D.M. has an extreme limitation in this domain of functioning. Notably, an "extreme" limitation is a very serious limitation of functioning. *See* 20 C.F.R. § 416.926a(e). Plaintiffs have simply not demonstrated D.M.'s limitations are that severe. Thus, the Court will not reverse the ALJ's disability determination based upon this issue.

**4.  Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff on behalf of D.M. is supported by substantial evidence and should be affirmed. A

judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 6th day of April 2017.**

>  /s/  Barry A. Bryant
> HON. BARRY A. BRYANT
> U.S. MAGISTRATE JUDGE